**LANCASTER COLONY CORPORA-
TION, Appellee,**

v.

**ALDON ACCESSORIES, LTD., and Royal
London, Ltd., Appellants.**

**No. 255, Docket 74-1734.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 24, 1974.

Decided Dec. 2, 1974.

Arthur A. March, New York City, for appellants.

Alan H. Levine, New York City, for appellee.

Before WATERMAN, OAKES and GURFEIN, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment, after cross motions for summary judgment, for the holder of a design patent (No. 217,942) of a cigar holding ashtray. The United States District Court for the Southern District of New York, Charles H. Tenney, Judge, held for the plaintiff, Lancaster Colony Corporation (Lancaster), in its suit claiming that defendants, Aldon Accessories, Ltd. (Aldon), and Royal London, Ltd. (Royal), were selling ashtrays with a design infringing the plaintiff's design patent. As the court below found, there is no doubt of infringement in that appellants' ashtray is virtually identical to appellee's, the only differences being that appellants' ashtray is smaller and its top surface inclines at approximately an 8 degree angle from the trough end while the top surface of Lancaster's ashtray is parallel to its base. The only issue on this appeal is the validity of Lancaster's patent. In what seemed to the district court, as well as to us, a close case, we affirm.

Appellants contend, of course, that the ashtray design was fully anticipated by prior art and is therefore invalid under 35 U.S.C. § 103, which states that a patent may not be obtained

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains.

Appellants refer to four previously patented ashtray designs: Stock, No. 2,641,264 (1953); Chambers, No. 145,-562 (1946); Segal, No. 2,335,973 (1943); and Russell, No. 371,901 (1887), only one of which, Chambers, was considered by the Patent Office examiner during Lancaster's patent application. Appellee, of course, claims that its design is sufficiently distinctive to avoid the effect of 35 U.S.C. § 103.

This court held in G. B. Lewis Co. v. Gould Products, Inc., 436 F.2d 1176, 1178 (2d Cir. 1971), that § 103 was intended simply to codify the judicial precedents. See Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L. Ed.2d 553 (1966). The principal precedent is Hotchkiss v. Greenwood, 52

U.S. (11 How.) 248, 267 (1851),[1] and we have applied its teaching to design patents by saying

> that the requirement of invention is not met by a design which is merely "new and pleasing enough to catch the trade"; rather we have insisted that the design reflect "some exceptional talent beyond the skill of the ordinary designer," . . . .

G. B. Lewis Co. v. Gould Products, Inc., 436 F.2d at 1178.

The design patent here covers an ashtray which, viewed from above, is in the form of a trapezoid. There is an ash receiving trough at one end and a cigar holding or receiving channel extending from the receiving trough to the opposite end of the ashtray. The trough itself is large and trapezoidal. As the court below found, the Russell patent introduced by appellee shows an ashtray with a trough at one end and a channel extending from the trough to the end of the ashtray opposite the trough. The shape of the Russell patent is rectangular. The shape of the trough is rectangular and the groove is shallower than that in the design patent here in suit. The Russell patent has a different length to height ratio and different front and rear end height to width ratios from the patent at bar. The edges of Russell appear to be right angled while those of the design patent here in suit are chamfered.

Segal, No. 2,335,973, is trapezoidal in shape with a trapezoidal trough, but there the similarities with appellee's design end. Segal slopes gently from the trough end to the cigarette holding end, then curves at a place where it appears that a cigarette may be held. The tray is shaped so that a cigarette can be held in one of two ways, thereby apparently avoiding having the cigarette tip into the trough. While Segal is roughly trapezoidal, it bears no real resemblance

to appellee's ashtray, and we fail to see how combining the disclosures of the Russell and Segal patents can yield the neatness, simplicity, functional style and general air of contemporary solidity that is to be found in the appellee's ashtray. Those elements enable us to agree with the court below as to the applicability of In re Blum, 153 U.S.P.Q. 177, 180 (CCPA 1967), where it said that

> [T]here are no portions of a *design* which are "immaterial" or "not important." A design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design.

Appellants also rely on the Stock patent, No. 2,641,264, which is an ashtray for installation in vehicles, in which the trough conforms to the shape and outline of the outer wall and the receptacle is roughly trapezoidal in shape. However, it is a two-part affair including a thin plate hinged to an ashtray body, and it is the plate which fits on top of the receptacle which gives the ashtray, to a very limited extent, a trapezoidal appearance.

Chambers, Design 145,562, which was considered by the Patent Examiner during the patent application for the patent in suit, shows a pipe receptacle having an upper surface of trapezoidal shape. We agree with appellee that this shape was employed because a pipe has a long thin stem with a large bowl at one end. Plainly it has nothing to do with a trapezoidal shape for an ashtray since the pipe receptacle is simply a container for the pipe; it is not designed for use as an ashtray.

The Patent Office examiner did not refer, as we have said, to Segal, Stock or Russell but in addition to Chambers did refer to Gluck, No. 199,716 (1964), and Gayle, No. 172,873 (1964). Both Gayle and Gluck are, if anything, closer to the appellee's ashtray than are the other

---

1. . . . . for unless more ingenuity and skill in applying the old method . . . were required in the application of it . . . than were possessed by an ordinary mechan- ic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention.

patents relied upon by the appellants, and yet the Patent Office examiner considered appellee's design sufficiently innovative to issue the patent. Gayle is trapezoidal in shape with a trough extending throughout the ashtray and a little cigarette holder in the middle. Gluck is more coffin-shaped with a trough in the wider portion and side grooves at an angle for cigarettes. It also has style, simplicity and distinctive features.

All in all, we consider that the pertinent prior art cited here indicates that the design in suit was novel, original and of genuine artistic merit, demonstrating a creative skill surpassing that of the routine. *See* International Silver Co. v. Pomerantz, 271 F.2d 69 (2d Cir. 1959). The fact that the prior art contains elements found in appellee's ashtray does not automatically invalidate the patent. We have previously held that

> the mere fact that a person has utilized in combination a number of elements which severally were well known will not defeat the patentability of the combination. . . . But the utilization of old elements in combination must represent an exercise of inventive skill and creative talent beyond that of the ordinary designer chargeable with knowledge of the prior art.

Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 696 (2d Cir. 1961).

Judge Tenney below with typical candor stated that he found it extremely difficult to verbalize his resolution of the issue. We agree that one really has to see the appellee's ashtray to appreciate its simplicity and its clear lines combining with the transparency of lead crystal to make it quite attractive. This court has previously said that "[t]he simplicity of an invention or an improvement thereof is not, however, the test of its obviousness." Shaw v. E. B.

& A. C. Whiting Co., 417 F.2d 1097, 1104 (2d Cir. 1969), cert. denied, 397 U.S. 1076, 90 S.Ct. 1518, 20 L.Ed.2d 811 (1970). As Willa Cather put it, in a literary context, "Art . . . should simplify. That, indeed, is very nearly the whole of the higher artistic process; finding what conventions of form and what detail one can do without and yet preserve the spirit of the whole . . . . " We believe that the combination here is a new, original, decorative and unobvious design for a cigar ashtray.

Interestingly, the design achieved some considerable commercial success in that Lancaster, under an exclusive contract, sold over 9,000 of the ashtrays to Alfred Dunhill, Ltd., between 1969 and 1972 (over half of which were sold during 1972); Dunhill in turn retailed the ashtrays for $39.50 each. To be sure, we are told that they were retailed in a handsome box with silk lining, but it is the aesthetic appearance of the ashtray itself which attracts a purchaser at such an expensive price. And as was stated by the Ninth Circuit in Robert W. Brown & Co. v. DeBell, 243 F.2d 200, 202 (9th Cir. 1957), commercial success is of considerable importance in determining the validity of a design patent because in the end the objective of most such designs is to enhance saleable value. *See also* Graham v. John Deere Co., 383 U.S. at 17, 86 S.Ct. 684; International Silver Co. v. Pomerantz, 271 F.2d at 72.

Here there not only was commercial success, which in an otherwise close case might tip the scales,[2] but there was also clearcut imitation by the appellants. It is possible to pick up several of this year's Christmas catalogues and see either the appellants' or another imitator's design advertised to retail at a price of $20 or just under $20. While we do not go dehors the record for deciding the merits, we think that the description of the design in one such catalogue indi-

---

2. Commercial success was not a factor the district court weighed in its balance.

cates, with a little salesmanship, perhaps, just what we are talking about. The ashtray is there referred to as "The Heavyweight." It is said to be "a solid piece of crystal glass that even feels like it belongs in a man's den or on his desk." The mail order advertisement [3] goes on to say,

> Lots of good design here too. The cigar ashtray is typical of what you get when you combine honest good looks with utilitarian, functional design. Ever notice how most ashtrays just don't seem to fit a good sized cigar? This one does. Also perfect for today's extra long cigarettes. (It's nice to know, too, that this ashtray duplicates almost exactly—and incredibly—the $40 Fifth Avenue version.) So good-looking, you may want to use it as a paper weight, paper clip holder, etc.

The $40 Fifth Avenue version is, of course, the Dunhill ashtray which was sold by appellee.

Some time ago this court said in a case that has since been followed in the Fourth and Fifth Circuits,[4] among others,

> The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think.

Kurtz v. Belle Hat Lining Co., 280 F. 277, 281 (2d Cir. 1922). *See also* Shaw v. E. B. & A. C. Whiting Co., 417 F.2d at 1106.[5]

We conclude, with Judge Tenney, that this ashtray design is exactly what the design patent statute was intended to encourage. As said in Gorham Co. v.

White, 81 U.S. (14 Wall.) 511, 524 (1871),

> The acts of Congress which authorize the grant of patents for designs were plainly intended to give encouragement to the decorative arts. They contemplate not so much utility as appearance, and that, not an abstract impression, or picture, but an aspect given to those objects mentioned in the acts.

It is only a simple cigar ashtray, but it is an aesthetically pleasing design and one which reflects "some exceptional talent beyond the skill of the ordinary designer." Lewis Co. v. Gould Products, Inc., 436 F.2d at 1178.

Judgment affirmed.

3. From The Gallery division of Amsterdam Co., Amsterdam, New York.

4. Sel-o-Rak Corp. v. Henry Hanger and Display Fixture Corp. of America, 232 F.2d 176 (5th Cir.), cert. denied, 352 U.S. 870, 77 S. Ct. 95, 1 L.Ed.2d 76 (1956); Ackermans v. General Motors Corp., 202 F.2d 642 (4th Cir.), cert. denied, 345 U.S. 996, 73 S.Ct. 1139, 97 L.Ed. 1403 (1953).

5. It is also interesting that while appellants rely heavily on the Russell patent which has been in existence since 1887 as "a clear anticipation of the design of the patent in suit," the many copies of appellee's design did not appear until after appellee's ashtray appeared on the market.